Edward S. Lentol, J.
This is a motion to dismiss the count of arson in the second degree. The defendant is charged by indictment with the crimes of arson in the second degree, arson in the fourth degree, reckless endangerment in the first degree, based upon the allegations that he set fire to an abandoned building which adjoined another building to which the fire spread. It is alleged that the second building was inhabited and the event occurred at night.
It is defendant’s contention that the count of arson in the second degree should be dismissed because the fire was not set in the inhabited building but spread to it. He points to the language of section 150.15 of the Penal Law which reads as follows: "A person is guilty of arson in the second degree *536 when he intentionally damages a building by starting a fire; and when (a) another person who is not a participant in the crime is present in such building at the time, and (b) the defendant knows that fact or the circumstances are such as to render the presence of such a person therein a reasonable possibility.” (Emphasis supplied.)
The defendant contends that by using the word “such” the legislative intent was to confine the crime of arson in the second degree to a case when a fire is started in an inhabited building.
The court rejects the narrow construction which the defendant would place on the statute defining arson in the second degree.
To follow the language of the statute, here, the defendant is charged with intentionally damaging a building (the inhabited dwelling) by starting a fire (in the vacant building) and such building (the inhabited dwelling) was occupied.
The case of Hennessey v People (21 How Prac 239 [1861]) involved a case where a fire was started in a frame building at 33 Gaerck Street, which was uninhabited at the time. The fire spread to the adjoining building at 35 Gaerck Street which was occupied by Caroline Brown and this was the building mentioned in the indictment.
The court stated (p 242):
“It appears to be perfectly settled, if the prisoner set fire to No. 33, and thereby the adjoining building No. 35 was set fire to or burnt, that he could be indicted and convicted of setting fire to No. 35. (2 Russ, on Cr., 550; 2 East. P.C., c. 21, §§ 8, 10, 31; Rex. agt. Cooper, 5 Carr. & P., 535.)
"In law, and in morals, a person must be presumed to do, and be held responsible for doing, that which he sees must be the necessary and inevitable consequence of the immediate and direct act.”
In the dissenting opinion in that case, Allen, J. stated (p 247): “I have no doubt of the correctness of the charge that the prisoner could be convicted of burning the Brown house upon proof that he feloniously fired his own building, and that the fire communicated to the dwelling from it.”
In the case of Woodford v People (62 NY 117 [1875]), the defendant set fire to a shed which spread to 35 dwellings. The defendant was convicted of setting fire to one of the dwellings inhabited by Mary Parker. The court said (p 128):
*537 "The fire was not set in any one of the houses specified, but the charge is that the fire was kindled in the shed for the purpose of burning the houses, and there can be no question that an indictment for burning one house will be sustained by proof of the firing of another with criminal intent of burning the house specified.” And (p 133): "There is no injustice in holding a person responsible for all the consequences of his guilty act, although they may be more extensive than he intended”.
The Woodford case cites the case of Rex v Benfield (2 Burr, 980), in which Lord Mansfield used the expression "cannot the king call a man to account for a breach of the peace, because he broke two heads instead of one?” The Woodford case (supra) is cited in People v Roderman (34 Misc 2d 497, 511).
In Roderman, decided in 1962, the court stated (p 511): "The only present-day relaxation of the intent-requirement occurs where, as a 'manifestly’ foreseeable consequence, the burning of an appurtenance will endanger the main building, or putting fire to the one building will endanger another because of their location with respect to each other. In such case, the person directly firing the appurtenance or contiguous building is deemed to have burned the indirectly-fired building 'as of the moment when the fire from the one communicates to and sets on fire the other’.”
In People v Kibbe (35 NY2d 407), the defendants abandoned a helplessly intoxicated robbery victim in subfreezing temperatures without shoes or eyeglasses, with his pants rolled down and his shirt rolled up, beside a dark road about one-half mile from the nearest structure. The death of the victim resulted from the victim being struck by a truck. The conviction was sustained, the Court of Appeals stating (p 412):
"It will suffice if it can be said beyond a reasonable doubt, as indeed it may be here said, that the ultimate harm is something which should have been foreseen as being reasonably related to the acts of the accused. (1 Wharton, Criminal Law Procedure, § 169.)”
Subsequent to the determination by the New York Court of Appeals the defendant instituted a habeas corpus proceeding (Kibbe v Henderson) in the United States District Court for the Northern District of New York and an order denying the petition was entered. An appeal was taken to the United States Court of Appeals for the Second Circuit (Kibbe v *538 Henderson, 534 F2d 493) and that court granted the writ upon the ground that the failure of the State trial court to give adequate instructions on the question of causation deprived the petitioner of his right to a fair trial. The writ was specifically granted as to any detention arising from the conviction "unless retrial of the petitioner is commenced within 60 days from the date of the filing of this order” (p 499).
A careful reading of Judge Lumbard’s opinion makes it clearly apparent that the writ was granted because of "error in the instruction” (p 497). Thus it can be seen that the writ was granted because of deficiencies in the charge and not because of any holdings as to "foreseeable consequences.”
A supervening cause is an unlocked for development and therefore not foreseeable.
An intervening cause may be a coincidence or a response.
Judge Lumbard expressly pointed out the necessity of an explanation to the jury of the concept of intervening and supervening causes. Recognizing the "complexity of the definition of legal causation,” he stated (p 498, n 6 [quoting from LaFave and Scott, Criminal Law [1972], p 257 et seq.):
"An intervening act is a coincidence when the defendant’s act merely put the victim at a certain place at a certain time, and because the victim was so located it was possible for him to be acted upon by the intervening cause * * *
"By contrast, an intervening act may be said to be a response to the prior actions of the defendant when it involves a reaction to the conditions created by the defendant.
"Thus * * * it may be said that a coincidence will break the chain of legal cause unless it was foreseeable, while a response will do so only if it is abnormal (and, if abnormal, also unforeseeable) * * *
"Where A, with intent to kill B, only wounds B, leaving him lying unconscious in the unlighted road on a dark night, and then C, driving along the road, runs over and kills B. Here C’s act is a matter of coincidence rather than a response to what A has done, and thus the question is whether the subsequent events were foreseeable, as they undoubtedly were in the above illustration.” (See, also, People v Fowler, 178 Cal 657.)
This court is of the opinion that this Federal decision does not undermine the logic and rationale, nor the present state *539 of the law as enunciated by the New York Court of Appeals originally in Kibbe.
The present motion before this court is to dismiss a count in the indictment charging defendant of arson in the second degree and does not involve the sufficiency of a charge by the trial court to the jury.
The court concludes that when a perpetrator is accused of setting fire to an uninhabited building and the fire spreads to an adjacent inhabited building, such an occurrence is a foreseeable consequence of the original act without any supervening cause.
Accordingly, the defendant’s motion to inspect the Grand Jury minutes is granted to the extent that the court has inspected the same. The motion to dismiss the second count of the indictment (arson in the second degree) is denied.