OPINION OF THE COURT
Elizabeth W. Pine, J.
Defendant, indicted for arson in the second degree (Penal Law, § 150.15), three counts of arson in the third degree (Penal Law, § 150.10), and two counts of criminal mischief in the fourth degree (Penal Law, § 145.00), moves to dismiss counts one, three, four and six of the indictment for facial insufficiency, to dismiss all counts for alleged legal insufficiency of the evidence before the Grand Jury, and for a Sandoval hearing.
I. COUNT ONE (SECOND DEGREE ARSON)
Count one of the indictment accuses defendant of second degree arson, committed as follows: “defendant, on or about July 12,1983, in the County of Monroe, State of New York, intentionally damaged a building by starting a fire, to wit, the defendant set fire to a garage located at 156-158 Flanders Street in the City of Rochester, which spread to a building located at 162-164 Flanders Street * * * when another person who was not a participant in the crime was *369 present in such building located at 162-164 Flanders Street * * * and the defendant knew that fact or the circumstances were such as to render the presence of such a person therein a reasonable possibility.”
In 1965, New York’s arson statutes underwent substantial revision. The 1964 Commission Staff Notes observe that a “peculiar feature” of our former arson statutes was that third degree arson demanded a specific intent to destroy the building burned, but that the higher degrees of arson did not; the latter required, instead, only
“an intent to start a fire which turns out to be destructive [People v. Fanshawe, 137 N.Y. 68, 73, 75, 32 N.E. 1102 (1893); existing P.L. § 225]. Thus, while the lowest and presumably least culpable offense requires the highly culpable intent to destroy, the two most serious crimes are satisfied by what is in effect mere reckless conduct.
“This incongruous situation is reversed by the proposed Article. Here, it is the two higher degrees — distinguished from each other by the relative danger of personal injury — that require ‘intent to destroy or damage a building’ (proposed §§ 155.10, 155.15), and it is the third degree that is satisfied by recklessness (proposed § 155.05)” (1964 Commission Staff Notes on Proposed NY Penal Law, p 351, reprinted in Gilbert, Criminal Law & Procedure, 1982-1983, p 2A-70).
Significantly, after submission of the 1964 Study Bill, in which intent was so critical, close attention was immediately given the statutory definition of “building” as it appeared in the statutes defining arson. Recognition of the new intent requirement is reflected in the decision to redefine “building” as that term is used in the arson statutes. The former definition, drawn from the burglary statutes, required that, in a structure consisting of two or more units separately secured or occupied (e.g., an apartment house), each unit (apartment) be treated as a separate “building”. As noted by the commission, “[t]he difficulty with this proposition in the arson setting lies in its application to arson in the first degree [now second degree], which requires the presence of another person in the damaged ‘building’ at the time of the crime * * * Under the indicated [former] definition, one who starts a fire in an *370 individual apartment is not guilty of first degree arson if such apartment (the ‘building’ by definition) is unoccupied at the time even though the apartment house as a whole (the ‘building’ in a realistic sense) is teeming with humanity. Accordingly, the definition of a ‘building’ for arson purposes is changed * * * so that each individual unit ‘shall not be deemed a separate building’.” (Additional Commission Staff Comments on Changes in New York Penal Law since 1964 Study Bill, reprinted in Gilbert, Criminal Law & Procedure, 1982-1983, p 2A-144.)
Second degree arson, insofar as relevant here, is defined in section 150.15 of the Penal Law as follows: “A person is guilty of arson in the second degree when he intentionally damages a building * * * by starting a fire, and when (a) another person who is not a participant in the crime is present in such building * * * at the time, and (b) the defendant knows that fact or the circumstances are such as to render the presence of such a person therein a reasonable possibility” (emphasis added).
The issues here are the sufficiency of the indictment, whether the proof supports it, and the accuracy of the instructions given the Grand Jury, concerning the element of intent.
Intent to start a fire and intent to damage a building are both required. Thus, even in fourth degree arson, based on intentionally starting a fire but only recklessly damaging a building, absence of intent to start a fire negates the crime, despite any recklessness as to the building. (People v Lebron, 68 AD2d 836 [defendant who, while painting, threw a cigarette to the floor, igniting a flammable liquid used to mix paint, not guilty of fourth degree arson].)
The proof before the Grand Jury here contains evidence of defendant’s intent to start a fire, and to damage the garage where the fire was ignited. The indictment does not allege that defendant intended to damage the occupied building next door.
Only two reported cases decided after the 1965 Penal Law revisions appear relevant to the issue of intent.
In People v Davis (89 Misc 2d 535), the defendant evidently urged that second degree arson, under the current statute, be confined strictly to cases in which the fire “is *371 started in” the inhabited building. The Davis court understandably rejected defense counsel’s contention that whether the fire was started within the inhabited building should be controlling. The reading of section 150.15 of the Penal Law urged by the defense in Davis would, in effect, have rewritten the statute to read “damages a building by 'starting a fire therein” where it instead reads “damages a building by starting a fire”. The location at which ignition occurs, standing alone, neither proves nor disproves intent to damage an inhabited building, or any other element of second degree arson.
Davis (supra) went much further, however, stating as what might seem a rule of law (p 539), “that when a perpetrator is accused of setting fire to an uninhabited building and the fire spreads to an adjacent inhabited building, such an occurrence is a foreseeable consequence of the original act without any supervening cause.” The issue, however, is intent, not causation. A result is intentional, under the Penal Law, when a person’s “conscious objective is to cause such result” (Penal Law, § 15.05). However, since intent is a secret and silent operation of the mind, circumstantial proof may be considered in determining it. In such cases, the facts may raise an inference (People v Blum, 72 AD2d 691) that a defendant intended to burn an inhabited building.
A case in point is People v Torres (99 Misc 2d 767). Here, defendants allegedly lit a torch while committing a burglary, and placed it, still burning, upon the wooden floor of the basement of an inhabited building in close proximity to papers and other readily combustible objects, taking no measures to contain the fire or to extinguish it. Though defendants denied having had any intent to damage the inhabited building (in which six people died of asphyxiation), the court determined that the proof warranted a finding there was reasonable cause to believe defendants guilty of (among other crimes) second degree arson.
In this case, defendant allegedly started a fire in a garage at 156-158 Flanders Street. The fire leveled the garage but apparently did not damage the dwelling at that address. It did, however, damage the east wall of a garage at 162-164 Flanders Street, blister the right side of a van *372 located about 10 feet from the latter garage, and cause radiated heat damage, including some fire damage, to the northeast corner of the porch of the inhabited building, 162-164 Flanders.
Certainly when compared to the proof in Torres, the circumstantial evidence of defendant’s intent to burn the inhabited building is weak.
The People rely on People v Davis (89 Misc 2d 535, supra) for the proposition that second degree arson is properly charged here even if defendant “did not inten[d] to directly damage” (emphasis added) the inhabited building. To whatever extent People v Davis (supra) may be authority for such a proposition, this court declines to follow it. On its face the indictment is defective.
The legal instructions given the Grand Jury were consistent with the People’s position that intent to damage the inhabited building was not required and were therefore erroneous.
Since it is conceivable that a Grand Jury could find circumstantial evidence of intent to burn the inhabited building by starting a fire in the garage, count one of the indictment is dismissed, pursuant to CPL 210.20 (subd 1, pars [a], [c]), but in accordance with CPL 210.20 (subd 4), the dismissal is with leave to the People to re-present to a new Grand Jury, if so advised.
II. COUNT THREE (THIRD DEGREE ARSON)
Count three is a third degree arson charge based on damage to a garage to which the fire allegedly spread. Like count one, it fails to allege the requisite intent to damage the garage in question.
Count three is defective, and is dismissed (CPL 210.20, subd 1, par [a]), but with leave to the People to re-present to a new Grand Jury (CPL 210.20, subd 4), if so advised.
III. COUNT FOUR (FOURTH DEGREE ARSON)
Count four arises from damage to a parked motor vehicle. The indictment, in this instance, does allege intent to damage the vehicle itself, by starting a fire in the garage next door. While the circumstantial evidence of such intent may be limited, it is sufficient to support this properly *373 drawn charge. Defendant’s motion to dismiss this count is denied.
IV. COUNT SIX (FOURTH DEGREE CRIMINAL MISCHIEF)
Count six charges criminal mischief in the fourth degree. It alleges that defendant intentionally damaged property by setting fire to a garage which spread to a boat. For the same reasons discussed in connection with counts one and three this count is defective and is dismissed, but with leave to the People to re-present to a new Grand Jury, if so advised.
The court has considered the remaining grounds raised in defendant’s motion and, except to the extent of granting defendant’s motion for a Sandoval hearing prior to trial, finds them without merit.